## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MIDDLETON DUNMORE, | : | |
| | : | Civil Action No. |
| Plaintiff, | : | 08-2708 (NLH/KMW) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| KAREN BALICKI, et al. | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES**:

Middleton Dunmore
# 531173
New Jersey State Prison
P.O. Box 861
Trenton, N.J. 08625
*Pro Se*

Daniel Michael Vannella, Esquire
New Jersey Division of Law
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, N.J. 08625
*Attorney for Defendant Sergeant Ennals*

**HILLMAN, District Judge**

This matter comes before the Court by way of an unopposed[1] motion [Doc. No. 40] for summary judgment by Defendant, Sergeant Calvin Ennals seeking to dismiss Plaintiff's complaint with prejudice.  The Court notes that Plaintiff did not file an opposition to Defendant Ennals' motion for summary judgment and the

_____

1.  Counsel for Defendant Ennals certified that copies of the motion for summary judgment, brief, and supporting materials were mailed to Plaintiff via certified mail at the address Plaintiff provided to the Court.  (Certificate of Service [Doc. No. 40-5] 1.)

time for opposition has expired.  The Court has considered Defendant's motion and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, Defendant's motion is granted.

## I.   <u>JURISDICTION</u>

In this action, Plaintiff, Middleton Dunmore, an inmate incarcerated with the New Jersey Department of Corrections ("NJDOC"), has brought a civil rights complaint against Defendant, Sergeant Calvin Ennals, pursuant to 42 U.S.C. § 1983.  The Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over any state law claim pursuant to 28 U.S.C. § 1367.

## II.   <u>BACKGROUND</u>

Plaintiff, an inmate currently incarcerated at New Jersey State Prison in Trenton, New Jersey, submitted the complaint in this action on May 30, 2008 seeking damages and injunctive relief pursuant to 42 U.S.C. § 1983 for violations of his Eighth and Fourteenth Amendment rights based on allegations of excessive force by corrections officers and subsequent denial of medical care.[2] (Pl.'s Compl. 1.)  In the complaint,[3] Plaintiff alleges that on the

---

2. As noted in the Court's March 28, 2011 Opinion, Plaintiff "also appears to set forth a claim for assault and battery under New Jersey law."  (Op. [Doc. No. 38] 3 n.2, Mar. 28, 2011.)

3. In the present motion for summary judgment, Defendant Ennals cites to the allegations set forth in Plaintiff's complaint, but

morning of November 24, 2006, while Plaintiff was incarcerated at
South Woods State Prison ("SWSP") in Bridgeton, New Jersey,
Defendant Ennals and other corrections officers approached
Plaintiff and told him to lock into his cell. (Id. ¶ 7.)
Plaintiff contends that "[u]pon locking in[,]" the officers kicked
his cell door and instructed Plaintiff to show his hands and come
out of his cell. (Id. ¶ 8.) According to Plaintiff, the officers
then forcefully shoved Plaintiff against the wall, kicked his legs,
and frisked him, questioned him regarding the whereabouts of
weapons. (Id. ¶ 9.)

Plaintiff alleges that he was then taken to another room at
SWSP, and after twenty to twenty-five minutes passed, Defendant
Ennals instructed Plaintiff to exit the room by walking backward
with his hands on his head. (Id. ¶ 10.) At that point, Plaintiff
asserts that Defendant Ennals "slammed" Plaintiff "face first
against the wall" and handcuffed him. (Id.) Plaintiff further
alleges that the corrections officers then escorted Plaintiff down
the stairs and pushed him "head first" into each door that they
passed. (Id. ¶ 11.) Plaintiff asserts that he was ultimately
taken to the prison's barber shop where he remained, handcuffed,
for about an hour and a half, and that the officers refused to

_____

notes that these allegations "are cited solely to provide the
[C]ourt with the basis" of Plaintiff's claims and that Defendant
does "not consider them undisputed[.]" (Br. on Behalf of Def.
Calvin Annals in Supp. of a Mot. for Summ. J. [Doc. No. 40-1]
(hereinafter, "Def.'s Br."), 4 n.2.)

grant him access to the bathroom.  (<u>Id.</u> ¶ 12.)  Plaintiff contends that upon arrival at the prison's medical clinic, he reported to a nurse that he had suffered injuries to his head and face as a result of the officers' actions.  (<u>Id.</u> ¶ 13.)  However, Plaintiff alleges that he was "pulled out [of] the door" before he received any medical treatment and was then taken to pre-hearing detention. (<u>Id.</u> at ¶¶ 13, 14-16.)

By Order dated October 21, 2008, the Court dismissed "any and all claims against defendants Karen Balicki and Chrystol Leys" a supervisor, and a former corrections officer, respectively. (Order [Doc. No. 4] 5, Oct. 21, 2008.)  However, the Court permitted Plaintiff's claims against Defendant Ennals to proceed past <u>sua sponte</u> dismissal.  (<u>Id.</u>)  Plaintiff's subsequent motion to amend his complaint was denied by Opinion and Order dated July 15, 2009. (Op. [Doc. No. 18] 7-8, July 15, 2009; Order [Doc. No. 19] 1, July 15, 2009.)

On June 10, 2010, Defendant Ennals moved to dismiss Dunmore's claims or, alternatively, for summary judgment based on Plaintiff's alleged failure to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a).  (<u>See generally</u> Br. by Def. Calvin Ennals Supporting a Mot. to Dismiss Pl.'s Compl. Pursuant to Fed. R. Civ. P. 12(b)(6), and/or for Summ. J. [Doc. No. 27].)  By Opinion dated March 28, 2011, the Court denied Defendant Ennals' motion without prejudice finding that the record at the time was insufficient to demonstrate "definitively that a suitable grievance procedure was

made available to [Plaintiff] so that he could pursue an administrative remedy for [Defendant] Ennals' actions." (Op. [Doc. No. 38] 6, Mar. 28, 2011.)   The Court specifically noted the absence from the record of "any documentation or other evidence that enable[d] the Court to evaluate [the prison's grievance procedure], and to ensure that it [was] properly disclosed to inmates and satisfie[d] the dictates of 42 U.S.C. § 1997e(a)." (Id.)   Accordingly, the Court found that Defendant Ennals did not satisfy his burden to demonstrate that Plaintiff failed to exhaust his administrative remedies.[4]   (Id. at 7.)

## III.  DISCUSSION

### A.  Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's

---

4.  The Court noted in the March 28, 2011 Opinion that although Defendant "Ennals' counsel certifie[d] that [Plaintiff] was properly served at his mailing address[,]" Plaintiff "nevertheless, [did] not respond[] to Ennals' motion." (Op. [Doc. No. 38] 3, Mar. 28, 2011.)

favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).
A fact is "material" if, under the governing substantive law, a
dispute about the fact might affect the outcome of the suit. <u>Id.</u>
"In considering a motion for summary judgment, a district court may
not make credibility determinations or engage in any weighing of
the evidence; instead, the nonmoving party's evidence 'is to be
believed and all justifiable inferences are to be drawn in his
favor.'" <u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir.
2004) (citing <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating
the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S.
at 323 ("[A] party seeking summary judgment always bears the
initial responsibility of informing the district court of the basis
for its motion, and identifying those portions of 'the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any,' which it believes
demonstrate the absence of a genuine issue of material fact."
(citation omitted); <u>see also</u> <u>Singletary v. Pa. Dept. of Corr.</u>, 266
F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is
on the summary judgment movant to show the absence of a genuine
issue of material fact, 'the burden on the moving party may be
discharged by 'showing' -- that is, pointing out to the district
court -- that there is an absence of evidence to support the
nonmoving party's case' when the nonmoving party bears the ultimate
burden of proof.") (citing <u>Celotex</u>, 477 U.S. at 325). Once the

moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

### B. Exhaustion of Administrative Remedies

In seeking summary judgment, Defendant Ennals argues that Plaintiff's claims under Section 1983 must be dismissed because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). (Br. on Behalf of Def. Calvin Annals in Supp. of a Mot. for Summ. J. [Doc. No. 40-1] (hereinafter, "Def.'s Br."), 12-15.) Defendant Ennals asserts that Plaintiff did not follow the requisite grievance procedures for prisoners incarcerated within the NJDOC and thus all federal claims in the complaint should be dismissed. (Def.'s Br. 14-15.)

As recognized by the Third Circuit, "[u]nder the Prison[] Litigation Reform Act, a prisoner must exhaust available administrative remedies before bringing suit concerning prison conditions." Daniels v. Rosenberger, 386 F. App'x 27, 29 (3d Cir.

2010) (citing 42 U.S.C. § 1997e(a)).  "Whether an administrative remedy is available to the prisoner is a matter of law."  <u>Daniels</u>, 386 F. App'x at 29.  To determine whether an administrative remedy is "available", the relevant inquiry is whether the remedy is "'capable of use; at hand.'"  <u>Id.</u> (citing <u>Brown v. Croak</u>, 312 F.3d 109, 113 (3d Cir. 2002)).  "Proper exhaustion of administrative remedies requires filing a timely or otherwise procedurally non-defective grievance."  <u>Daniels</u>, 386 F. App'x at 29 (citing <u>Woodford v. Ngo</u>, 548 U.S. 81, 83-84 (2006)).  Furthermore, "[t]he prisoner must 'carry the grievance through any available appeals process' before the remedies will be deemed exhausted."  <u>Griffin v. Samuels</u>, No. 06-4488, 2008 WL 961241, at *2 (D.N.J. Apr. 8, 2008) (citation omitted).

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002). Moreover, exhaustion of remedies under the PLRA is mandatory, and a prisoner's failure to exhaust such remedies directs dismissal of the claims.  <u>Concepcion v. Morton</u>, 306 F.3d 1347, 1352, 1355 (3d Cir. 2002).  Finally, "[t]he burden of proving exhaustion of administrative remedies is on the [defendant-prison officials]." <u>Cerome v. Moshannon Valley Corr. Ctr./ Cornell Cos.</u>, No. 09-2070, 2010 WL 4948940, at *4 (3d Cir. Dec. 7, 2010).

**C. Inmate Grievance and Tracking Program at SWSP**

The NJDOC "requires all correctional institutions to provide inmates with a departmentally-approved procedure for resolving complaints." DiDiano v. Balicki, No. 10-4483, 2011 WL 1466131, at *1 (D.N.J. Apr. 18, 2011) (citing N.J. ADMIN. CODE § 10A:8-1.1-3.6)). Pursuant to the requirements of the New Jersey Administrative Code, SWSP developed an Inmate Handbook, which established an administrative grievance procedure, known as the Inmate Grievance and Tracking Program ("IGTP").[5] (Declaration of Linda Linen [Doc. No. 40-2] (hereinafter, "Linen Decl."), ¶¶ 3, 5.) As described by Linda Linen, a Program Development Specialist employed by the NJDOC at SWSP, the IGTP is "designed to provide a direct and confidential route for inmates to make the Administration aware of any problems or concerns and to allow [the Administration] to make an appropriate response in a timely and efficient manner." (Linen Decl. ¶¶ 1, 7.) The January 2003 edition of the SWSP Inmate Handbook delineates the four step process that constitutes the IGTP. (Ex. B to Linen Decl., SWSP Inmate Handbook, January 2003, 96.) As set forth in the Inmate Handbook, step one is an "Inmate Request Form"; step two is an "Interview Request Form"; step three is an "Administrative Remedy Form"; and step four is an "Administrative Remedy Form – Appeal". (Id.)

_____

5.  The IGTP is also sometimes referred to as the "Inmate Remedy System" in the SWSP Memoranda attached as Exhibit C to the Linen Declaration.  (See generally Ex. C to Linen Decl.)

To utilize the IGTP, an inmate initiates the process by completing a multi-part form, the Request System and Remedy Form, otherwise known as an "IRF". (Def.'s Br. 6; see also Linen Decl. ¶ 8.)  Inmates at SWSP can obtain IRFs in the law libraries or in their individual housing units from a housing unit officer or a social worker, and completed IRFs are then deposited in drop boxes in each housing unit. (Def.'s Br. 6; see also Linen Decl. ¶¶ 8-9.) Where an inmate is being held in close custody housing or has a limiting medical condition which prevents him from accessing a drop box, the inmate may turn in his completed IRF to a social worker or housing unit officer who then deposits the IRF in the drop box. (Def.'s Br. 6; see also Linen Decl. ¶ 10.)  Upon completion, all IRFs are directed to the inmate remedy system form coordinator, who is responsible for forwarding each IRF to the appropriate SWSP staff member or supervisor to provide the inmate with a response. (Def.'s Br. 6; see also Linen Decl. ¶ 11.)  After a SWSP staff member or supervisor provides a response, but prior to the IRF being returned to the inmate, the IRF is reviewed by an appropriate administrative designee to determine whether the response to the IRF appropriately addresses the issues raised. (Def.'s Br. 6; see also Linen Decl. ¶ 12.)  If approved by the administrative designee, the IRF is signed and returned to the inmate. (Def.'s Br. 6-7; see also Linen Decl. ¶ 12.)  Where an inmate has a follow-up question or is dissatisfied with the response outlined in the IRF, the inmate may initiate the administrative appeal process by

completing Part Four of the same IRF and resubmitting it in the appropriate drop box.  (Def.'s Br. 7; <u>see also</u> Linen Decl. ¶ 13.) According to Defendant, the Administrator at SWSP renders all appeals decisions, which constitute final decisions at the correctional facility level.  (Def.'s Br. 7; <u>see also</u> Linen Decl. ¶ 14.)  Thus, an inmate has exhausted his available administrative remedies upon receipt of a response to an administrative appeal of his IRF.  (Def.'s Br. 7; <u>see also</u> Linen Decl. ¶ 16.)

Defendant asserts that officials at SWSP inform inmates about the IGTP through distribution of the Inmate Handbook during intake and orientation and by bulletins posted throughout the facility. (Def.'s Br. 6; <u>see also</u> Linen Decl. ¶¶ 4-6.)  Defendant points to four separate SWSP Memoranda that were posted inside SWSP for inmates to read between 2005 and 2008[6] which describe the IGTP and provide inmates with instructions for properly utilizing the system.  (Def.'s Br. 6; <u>see also</u> Linen Decl. ¶ 6; <u>see, e.g.</u>, Ex. C to Linen Decl. SWSP Memorandum posted on Feb. 14, 2005 re: "Inmate Policy for Submitting the Inmate-Request Remedy Form"; Ex. C to Linen Decl. SWSP Memorandum posted on Oct. 8, 2005 re: "Inmate Request System Corrective Action Form"; Ex. C to Linen Decl. SWSP Memorandum posted on Dec. 20, 2007 re: "Inmate Policy for Submitting the Inmate Remedy System Form Effective January 1,

_____

6.  Each of the SWSP Memoranda attached as Exhibit C to the Linen Declaration indicate that these Memoranda remained posted for review by the inmate population "indefinitely" after the date of the initial posting.  (<u>See generally</u> Ex. C to Linen Decl.)

2008"; Ex. C to Linen Decl. SWSP Memorandum posted Feb. 8, 2008 re: "Inmate Remedy System Procedure".)[7]

As Defendant points out, three of these SWSP Memoranda set forth that the Administrator's decision on an appeal of an IRF is considered a "final decision" at the institutional level. (Def.'s Br. 7; see also Linen Decl. ¶ 15; see, e.g., Feb. 14, 2005 SWSP Memorandum, 3, ¶ E.2 ("Appeal decisions shall be rendered by the Administrator and are therefore to be considered as final decisions at the institutional level."); Oct. 8, 2005 SWSP Memorandum, 3, ¶ F.4 ("Appeal decisions shall be rendered by the administrator and are therefore to be considered as final decisions at the correctional facility level."); Feb. 8, 2008 SWSP Memorandum, 3, ¶ C.4 (same).)  The December 20, 2007 and the February 8, 2008 SWSP Memoranda specifically highlight that before an inmate may apply to the courts for relief, he is required to utilize the IGTP, referred to as the, Inmate Remedy System.  (See, e.g., Dec. 20, 2007 SWSP Memorandum, 1, ¶ III ("Inmates are required to utilize the Inmate Remedy System before applying to the courts for relief."); Feb. 8, 2008 SWSP Memorandum,  1, ¶ II. (same).)

IV.  **ANALYSIS**

In denying Defendant Ennals' prior motion to dismiss, the Court concluded that the record at the time was insufficient to

---

7.  In citing to the SWSP Memoranda through the remainder of this opinion, the Court refers to each Memorandum by the date on which it was originally posted and cites to the relevant page and/or paragraph of each Memorandum.

demonstrate "definitively that a suitable grievance procedure was made available to [Plaintiff] so that he could pursue an administrative remedy for [Defendant] Ennals' actions." (Op. [Doc. No. 38] 6, Mar. 28, 2011.)  The Court also specifically noted that where was no documentation or other evidence in the record through which the Court could evaluate the prison's grievance procedure and to determine that it was properly disclosed to inmates. (Id.)  In the present motion for summary judgment, Defendant Ennals has provided the Court with numerous documents, including the January 2003 Edition of the SWSP Inmate Handbook distributed to inmates upon intake and orientation, as well as four separate SWSP Memoranda which were posted throughout the facility, all of which describe the IGTP available to inmates at SWSP. (See generally Exs. B & C to Linen Decl.)

In moving for summary judgment, Defendant Ennals relies on these documents and cites to Concepcion v. Morton, 306 F.3d 1347, 1348-55 (3d Cir. 2002), wherein the Third Circuit held that an administrative grievance procedure outlined in a NJDOC inmate handbook constituted an administrative remedy under the PLRA's exhaustion requirement. (Def.'s Br. 13.)  Defendant Ennals argues that in light of the Third Circuit's holding in Concepcion, Plaintiff "was obligated to properly exhaust all available administrative remedies, pursuant to prison procedure, prior to ... filing this complaint." (Id.)  Defendant contends that while incarcerated at SWSP, Plaintiff was not only aware of the IGTP, but

13

utilized the system on nine separate occasions between January 19, 2006 and June 10, 2009, wherein he filed nine separate IRFs. (Id. at 7-8; see also Linen Decl. ¶ 17; Ex. D. to Linen Decl., IRFs submitted to SWSP by Plaintiff.)  Defendant Ennals thus asserts that summary judgment is proper because Plaintiff failed to "file an IRF at SWSP addressing any complaint against [D]efendant Sgt. Ennals in general, or about the alleged events on November 24, 2006" which form the basis of the complaint and has therefore failed to exhaust his administrative remedies under the PLRA. (Id. at 14.)

Upon review of the January 2003 Edition of the SWSP Inmate Handbook submitted with the present motion, the Court has evaluated the prison's grievance procedure and finds, in light of the holding in Conception, that the administrative procedure set up through the IGTP at SWSP constitutes an administrative remedy under the PLRA's exhaustion requirement.  The Inmate Handbook describes to inmates the four steps of the IGTP which they may utilize to resolve grievances. (Def.'s Br. 6, 13; see also Linen Decl. ¶¶ 3-7; Ex. B to Linen Decl., SWSP Inmate Handbook, January 2003, 96.)  This process includes an opportunity to make a routine request or to request an interview, and also permits inmates with an opportunity to appeal a response to their request to the Administrator of the prison.  (Def.'s Br. 13; see also Linen Decl. ¶¶ 3-7; Ex. B to Linen Decl., SWSP Inmate Handbook, January 2003, 96.)  Moreover, the IGTP was further explained to inmates through four subsequent

SWSP Memoranda posted throughout the facility, which explicitly: (1) acknowledge that appeal decisions rendered by the Administrator constitute final decisions at the correctional facility level; and (2) caution inmates that they are required to utilize the IGTP system prior to applying to the courts for relief. (See generally Linen Decl. ¶¶ 6, 15; Feb. 14, 2005 SWSP Memorandum, 3, ¶ E.2; Oct. 8, 2005 SWSP Memorandum, 3, ¶ F.4; Dec. 20, 2007 SWSP Memorandum, 1, ¶ III; Feb. 8, 2008 SWSP Memorandum, ¶¶ II., C.4.)

Accordingly, the Court finds that the IGTP set forth in the January 2003 Edition of the SWSP Inmate Handbook, which Plaintiff would have received upon intake and orientation to SWSP in January of 2006, constitutes an administrative remedy that Plaintiff was required to exhaust prior to filing the complaint in this matter. See Ramos v. Hayman, No. 11-259, 2011 WL 3236395, at *4 (D.N.J. July 27, 2011) (finding that a NJDOC inmate handbook constituted an administrative remedy under PLRA's exhaustion requirement where (1) the handbook set forth a two-step grievance procedure including an opportunity for a routine request/interview and a chance to administratively appeal resulting decisions; and (2) inmates were specifically instructed of the requirement to utilize the inmate remedy system before seeking relief from the courts).

Having determine that the IGTP at SWSP constitutes an administrative remedy under the exhaustion requirement of the PLRA, the Court now considers whether Plaintiff complied with the requirement by properly exhausting all available administrative

15

remedies.  After careful consideration of the evidence presented by Defendant, the Court finds that Plaintiff failed to properly exhaust all available administrative remedies before filing the complaint in this action.  Initially, the Court notes that Plaintiff was incarcerated at SWSP from January 19, 2006 through June 10, 2009 -- a time frame which encompasses both the date of the incident alleged in the complaint, November 24, 2006; and the date upon which Plaintiff filed his complaint, May 30, 2008.  (See Def.'s Br. 12; see also Linen Decl. ¶ 2; Ex. A to Linen Decl., Inmate Progress Notes for Middleton Dunmore.)  Plaintiff is therefore subject to the requirements of the PLRA because he was incarcerated at the time he filed his complaint on May 30, 2008.  See Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir. 2002) (noting that while a plaintiff would not be subject to the requirements of the PLRA if he filed a timely complaint after his release from prison, a plaintiff "is bound by the PLRA" where his suit is filed before his release).

Moreover, as evidenced by: (1) the Inmate Handbook provided to Plaintiff upon his arrival at SWSP; (2) the four SWSP Memoranda posted indefinitely and available for review by Plaintiff during his incarceration at SWSP from January 2006 to June 2009; and (3) the nine IRFs Plaintiff filed while incarcerated at SWSP, Defendant has sufficiently demonstrated that Plaintiff had knowledge of the IGTP and the ability to utilize this administrative remedy to address his grievances.  See Ramos, 2011 WL 3236395, at *4

(concluding that plaintiff demonstrated his knowledge of and ability to use the administrative remedy process where he filed an inmate remedy form).

Despite Plaintiff's knowledge and ability to utilize the IGTP and the requirement that this procedure be followed prior to applying to the courts for relief, Plaintiff failed in this instance to submit an IRF that detailed the alleged incident of November 24, 2006 or that set forth any complaints, concerns, or grievances regarding any actions by Defendant Ennals. (See Def.'s Br. 14; see also Linen Decl. ¶ 17; Ex. D. to Linen Decl., IRFs submitted by Plaintiff to SWSP.)  In light of Plaintiff's failure to submit an IRF regarding the claims alleged in the complaint, the Court finds that Plaintiff did not comply with the multi-step process of the IGTP as set forth in the Inmate Handbook.

Plaintiff's non-compliance with the requirements of the IGTP constitutes a failure by Plaintiff to exhaust his administrative remedies with respect to the claims alleged in the current action, prior to seeking relief in court.  Therefore, Defendant Ennals' motion for summary judgment is granted.  See, e.g., Ramos, 2011 WL 3236395, at *4 (granting defendants' summary judgment motion where plaintiff failed to exhaust his administrative remedies as set forth in a NJDOC inmate handbook); DiDiano v. Balicki, No. 10-4483, 2011 WL 1466131, at *6 (D.N.J. Apr. 18, 2011) (finding defendants were entitled to summary judgment on plaintiff's Section 1983 claims as a result of plaintiff's failure to exhaust under the PLRA

17

where plaintiff failed to follow the administrative process offered by SWSP); Gardner v. Hendricks, No. 04-3561, 2006 WL 2331102, at *3-4 (D.N.J. Aug. 10, 2006) (granting summary judgment for defendant and finding plaintiff did not exhaust all administrative remedies before filing suit where plaintiff "failed to properly complete and fill out an [administrative remedy form] regarding" his grievance); see also DiGiovanni v. N.J. Dep't of Corr., 232 F. App'x 181, 183 (3d Cir. 2007) (recognizing that plaintiff's appeal lacked "any arguable basis in law" where plaintiff had not begun to pursue his administrative remedies at the time he filed the complaint and thus had not complied with the PLRA exhaustion requirement).

Finally, in the present motion, Defendant Ennals also seeks summary judgment as to Plaintiff's state law tort claims for assault and battery, and further asks the Court to dismiss all of Plaintiff's claims with prejudice.[8]  (See Def.'s Br. 15-19.) However, pursuant to 28 U.S.C. § 1367(c)(3), the Court, sua sponte, declines to exercise supplemental jurisdiction over any state law claims to the extent they are raised in Plaintiff's complaint. Under Section 1367(c)(3), "[a] district court may decline to

---

8. Although the Court grants Defendant's motion for summary judgment based on Plaintiff's failure to exhaust, the dismissal of Plaintiff's federal claims is without prejudice.  See Nifas v. Beard, 374 F. App'x 241, 245 (3d Cir. 2010) (affirming grant of summary judgment and dismissal of plaintiff's federal claims and noting the "dismissal of these claims, of course, [was] without prejudice.")

exercise supplemental jurisdiction over a claim if 'the district court has dismissed all claims over which it has original jurisdiction[.]'" Oras v. City of Jersey City, 328 F. App'x 772, 775 (3d Cir. 2009) (citing 28 U.S.C. § 1367(c)(3)). Moreover, as recognized by the Third Circuit, "[w]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Oras, 328 F. App'x at 775 (citing Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000)) (internal quotations omitted) (emphasis in original).

In this case, Plaintiff's federal law claims under Section 1983 against Defendant Ennals are dismissed without prejudice based on Plaintiff's failure to exhaust his available administrative remedies at SWSP before applying to the courts for relief. As a result, at this time there are no federal causes of action pending before the Court. Accordingly, the Court finds that considerations of judicial economy, convenience, and fairness do not affirmatively justify the exercise of supplemental jurisdiction in these circumstances. Although this case has been pending since May of 2008, the case is still in the early stages of litigation as demonstrated by the fact that no answer has been filed and the parties have not engaged in any discovery. Furthermore, although payments continue to be deducted from Plaintiff's prison account,

Plaintiff did not file opposition to the present motion [Doc. No. 40] for summary judgment, nor to Defendant's previous motion [Doc. No. 27] to dismiss, which was originally filed in June of 2010. Having declined to exercise supplemental jurisdiction, the Court dismisses any pending state law claims without prejudice.

**V.**     **<u>CONCLUSION</u>**

For the foregoing reasons, Defendant Ennals' Motion for summary judgment is granted. An Order consistent with this Opinion will be entered.

Dated:<u> November 15, 2011   </u>      <u>   /s/ Noel L. Hillman   </u>
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.